# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| CHRISTIAN LOPEZ, on behalf of himself and others similarly situated, | : : : | Case No. 2:19-cv-13340 |
| Plaintiff, | : : | CLASS ACTION COMPLAINT |
| v. | : : : | JURY DEMANDED |
| QUICKEN LOANS INC., | : : | |
| Defendant. | : | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Christian Lopez ("Plaintiff" or "Mr. Lopez") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Defendant Quicken Loans Inc. ("Quicken Loans" or "Defendant") sent automated text message calls to cellular telephone numbers, including the Plaintiff's, which is prohibited by the TCPA.

3. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally

place calls to hundreds of thousands or even millions of potential customers *en masse,* the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Christian Lopez is a Massachusetts resident.

6. Defendant Quicken Loans is a Michigan corporation with its principal place of business of 1050 Woodward Ave., Detroit, MI 48226. The Defendant has a Registered Agent of The Corporation Company, 40600 Ann Arbor Rd. E, Ste. 201, Plymouth, MI 48170. The Defendant engages in telemarketing into this district, as it did with the Plaintiff.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims*, 132 S. Ct. 740.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this district and 28 U.S.C. § 1391(b)(2) because a substantial

part of the events or omissions giving rise to the claim occurred in this district, as the telemarketing call to the Plaintiff was placed from this district.

## The Telephone Consumer Protection Act

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded

voice to any telephone number assigned to a paging service, cellular telephone service…." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

12.     The TCPA provides a private cause of action to persons who receive such calls. *See* 47 U.S.C. § 227(b)(3).

13.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

The Growing Problem of Automated Telemarketing

14.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

15.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/policy/advocacy/advocacy-filings/2016/06/ftc-staff-comment-federal-communications-commission-rules.

4

16. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc.

17. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203.

18. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

19. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 17, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

20. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018.  FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 17, 2019).

**Factual Allegations**

21. Defendant is in the business of providing mortgage lending services.

22. One of Defendant's strategies for marketing its services and generating business is through telemarketing.

23. Defendant's strategy for generating new customers involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

24. Defendant's telemarketing includes sending automated calls using SMS codes, which is systemic data used to track automated text messages.

25. Recipients of these calls, including Plaintiff, did not consent to receive them.

26. The Defendant used this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone or respond to the text contact through a telephone call.

27. Through this method, the Defendant shifts the burden of wasted time to the consumers it calls.

Calls to Plaintiff

28. Mr. Lopez is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

29. On August 7, 2019 and August 8, 2019 Mr. Lopez received automated calls from the Defendant.

30. The calls were made to Mr. Lopez's cellular telephone number, (617) 780-XXXX.

31. Mr. Lopez's cellular telephone number is used for residential purposes.

32. The text messages sent to Mr. Lopez are below:



7

33. The calls were made from SMS Code 26293.

34. The fact that a SMS code was used to send the text message is evident that it was sent using an ATDS, as SMS codes are reserved for automatically made text messages.

35. On information and belief, a text message containing an SMS short code is characteristic of a message sent using an ATDS that dials a large volume of telephone numbers from a prepared list.

36. The specific SMS Code 26293 is registered to Quicken Loans.

37. Mr. Lopez had not done business with the Defendant prior to receiving the calls.

38. The calls were unsolicited. Mr. Lopez had not, for example, applied for, inquired about, or looked for a loan on any website.

39. Prior to filing this lawsuit, Mr. Lopez wrote to Quicken Loans asking for any evidence it had of his purported consent to receive telemarketing calls from them; however, Quicken Loans provided none.

40. Moreover, despite texting "Stop" to SMS Code 26293 in an attempt to end the text messages as the messages directed, and after receiving purported confirmation that he would no longer receive messages from Quicken Loans, Mr. Lopez received another promotional text message from Quicken Loans.

41. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

42. The Defendant did not have the required prior express written consent to make the telemarketing calls at issue.

43. Defendant's purpose in making the calls was to sell its services to Plaintiff.

44. Plaintiff never provided his prior express written consent to receive the calls at issue.

45. The calls were not necessitated by an emergency.

46. Plaintiff's privacy has been violated by the above-described telemarketing robocalls from Defendant. The calls were an annoying, harassing nuisance.

47. Plaintiff and all members of the class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. Plaintiff and the class members were also harmed by use of their cell phone battery and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

## Class Action Allegations

48. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

49. The class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States to whom: (a) Defendant and/or a third party acting on its behalf made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using the telephone system(s) used in calling Plaintiff's cellular telephone number; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

50. Excluded from the class are the Defendant and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

51. The class as defined above is identifiable through phone records and phone number databases.

52. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

53. Plaintiff is a member of the class.

54. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated telemarketing to call cellular telephones;

    b. Whether Defendant placed calls without obtaining the recipients' prior consent for the call; and

    c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

55. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

56. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect

the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

57. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

58. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

59. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

60. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling Provisions

61. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice.

63. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

64. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular

telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

65. The Defendant's violations were negligent and/or knowing.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers advertising its goods or services, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

B. Because of Defendant's violations of the TCPA, Plaintiff seeks for himself and the other putative class members $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) and (c)(5).

C. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representatives of the class, and appointing the lawyers and law firms representing Plaintiff as counsel for the class; and

D. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

**/s/ Anthony I. Paronich**
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Counsel for Plaintiff*